Next case, Paul Fajora, argument of Browning v. Browning. Counsel, whenever you're ready, you may proceed. Pleased to court, Counsel. My name is Jerry Tuffensammer. I represent the appellant, Mr. Browning. I see it's close to lunchtime, so I'll try to be short. The appellant brings this appeal from the Circuit Court of Williamson County after a bench trial where the judge rendered a finding that the appellant's manufactured home, which the appellant placed on the athlete's property with the athlete's full knowledge, consent, and permission, did not constitute a valuable permanent improvement to the appellant's property. Just to give you guys a brief background. This was a mobile home, but then foundations built to anchor it essentially. Yes, Your Honor. It's a 26 by 56 foot manufactured home that comes out of two sections. Modular home. Not mobile home, but a modular home. Yes. Two pieces? Two pieces. And the foundation on this manufactured home was concrete footings with mortared together concrete blocks on top of the concrete footings that were all interconnected to a pier system on the inside. As counsel has noted in the Christian County case, which the appellees attempt to cite in support of their argument that this is not a permanent improvement, the foundation in this case is substantially different than the foundations in the Christian County cases. In the Christian County cases, the foundations contained blocks that were not mortared together. The blocks were set on gravel or concrete footings that only extended a few inches into the ground. Here the testimony at trial was that the footings below the block foundation extended below the cross line, that there was steel reinforcement in it, and that the whole foundation was part of an internal system. Under Illinois law, there's four factors that the court should look to in determining whether or not an improvement is a permanent improvement. The first factor is whether the addition was meant to be permanent or temporary. At trial in this case, it was undisputed that everybody believed that when they placed the home on there, they intended it to be permanent. Again, there's some background in this case. The appellant at the time was married to the appellee's only son and was the mother of their only grandchild. She placed the manufactured home that she purchased with her inheritance on the appellee's property with their consent. The second factor when determining whether an improvement is a permanent improvement is whether it became an integral component of the overall system. It's pretty clear that a home with a foundation system that extends below the cross line is part of an integral system. The third factor is whether the value of the property was increased. At trial, a real estate broker testified on behalf of the appellant that she estimated that the home construction on property would have added about $90,000 to $99,000 of value to the appellee's real estate. The fourth factor is whether the use of the property was increased. It's clear that the use of the property was increased because there was a new additional home on the property. Looking at those factors, I believe that the appellant's manufactured home was a permanent improvement to the real estate. Again, when these courts look at these, the most important factors that the courts look to is the intent of the parties. And it's undisputed that at trial, every witness testified that when they placed the home, they intended to place it there forever. You what? That they intended it to be permanent, to place it there forever. Although the appellee cites some testimony from the estranged spouse of the appellant that they had talked about maybe building a stick-built, regular house on the property. During cross-examination, he actually admitted that at the original time when the home was placed, they intended it to be permanent. And he also testified that they had plans to build a deck, a garage, a concrete driveway for use of the home, which contradicts his testimony that they intended to move that and build a different kind of home. Similarly, in in repaid taxes, the appellate courts have found that a cottage and a shed that were placed on skids were permanent improvements because they were intended by the parties to be annexed to the real estate. Although the Illinois courts have not specifically held that a manufactured home such as this constitutes a permanent improvement, the Federal Bankruptcy Court passed an in re-casper. In the in re-casper, the Federal Bankruptcy Court stated that when the home's wheels, tongues, and axles are removed, such as what happened in this case, and the home is placed on a block foundation, it's pretty clear that it's intended to be real estate. And therefore, it was real estate and was subject to pass with a tax deed. Now, once again, the appellate cite Christian County stating that the appellate courts have held that manufactured homes are not permanent improvements. Again, I point out that the foundation in this case is clearly different than the foundations in Christian County. Additionally, Christian County dealt with the interpretation of the property tax code at the time, which stated that manufactured homes placed on foundations would be taxed as real property if it was a permanent combination. Since Christian County was decided, the Illinois legislature has actually revised the Illinois property tax code to state any manufactured home that's placed outside of a mobile home park is to be determined as real estate. Thus, I think it's pretty clear that the legislature intended for the appellant's manufactured home to be real estate. The next case cited by Nepalese is Schweitzer v. City of O'Fallon. In Schweitzer, the court was looking at, which was decided in 1985, was looking at manufactured homes that still contained wheels, tongues, axles, and were unsuitable to be placed on a permanent foundation. That's not the case in this case. It's clear that the wheels, tongues, and axles were removed and the house was attached to a permanent block foundation. No basement though, right? No, there was a crawl space. And there are pictures of the home in the exhibits in this appeal. Based on this determination, we believe that the court erred in finding that the appellant's manufactured home was not a permanent improvement to the real estate. And denying her claim for an equitable lien for the full value that the manufactured home increased the appellee's real estate. Or for the value that she paid to place the manufactured home on the premises. Additionally, we believe that the court erred in denying the appellant's claim for unjust enrichment for the same award. And for those reasons, the appellant would request that you reverse the circuit court's ruling and remand the case back for determination of the evidence. Thank you, counsel. Counsel? Thank you. May it please the court, counsel? My name is Peggy Raymond and I represent the appellants Orlin and Deborah Browning. If you can't hear me, please say so. I have all this cold as well, so I apologize, your honors. I've got the same walkie-talkie. I noticed. As counsel indicated, the Illinois courts have not decided whether a manufactured home is considered a permanent improvement to the real estate. In this situation, what we had was a two-piece modular home that was brought out to the real estate. There was concrete pads poured, blocks were then set on that, and the mobile manufactured home was then placed on the blocks. Which is exactly what was in the Christian County Board of Appeals. Let me ask, can I ask a couple questions about that in terms of what the record shows? I mean, was this a foundation that went all the way around the perimeter of the house? My recollection, your honor, is there was a concrete pad poured that would go around the exterior of the home. Well, your opposing counsel referred to it as a footing. And of course, when a home is built, a concrete pad, a footing, is poured all the way around the perimeter of the house and the concrete block foundation is built on that. I'm asking you, tell me what the difference is between that and what was done here. Again, my understanding, and I'm trying to recall the photographs as well, there was a lot of testimony from Mike Brooks, who was the owner of Brooks Village Green Homes, where Misty purchased the property. He testified that there was, you know, the concrete pad or small footing that was dug, and it's my understanding it went around what would be the exterior of the home. The entire perimeter. Yes, that's my understanding. Because, you know, you see mobile homes and sometimes there are just two strips and then concrete blocks stacked, but that's not what was done here. That's not my understanding. My understanding is that there was basically a concrete strip poured from the entire perimeter, blocks were then set on that, and then the mobile home was then set on top of that. And the blocks were bordered. I'm not 100% certain on that now, your honor. I was trying to go back through my notes from the transcript, and I did not see that again when I was reviewing that, and I didn't have a copy of the actual transcript. So, I'm not 100% certain if those blocks were actually bordered together. Now, I do know that whenever Mr. Brooks testified, he indicated that you could pull those concrete blocks out, and that would not affect how this trailer was sitting there. What else was it sitting on? That's it, is my understanding, your honor. Okay, then how could you pull the blocks out and it not affect how it's sitting there? You see what I'm getting at? I mean, my understanding is the wheels were removed and disposed of, the tongues were removed and disposed of. The company took those back whenever they set them. So, it's not sitting on the wheels. There's some kind of anchoring system as well, straps. And again, I don't understand it all either, but from Mr. Brooks' testimony, he made it very clear, and I can give you the site, it was R-267. Sorry about R-250, the R-267 was Mr. Brooks' testimony. And he indicated that that exterior block foundation is not attached to the home itself, and that you could pull those blocks out, and the home would still be there. Okay. But so again, the way that this was, with the concrete pad, then the blocks sitting on it, and then the home on top of that, that's what was described in the Christian County Board of Appeals case. Now, the council also indicated that intention is a big factor. The parties did testify that they thought this was going to be a permanent home. The husband, Butch Browning, though, also testified that. They discussed building a stick-belt home. They discussed building a deck onto the mobile home. That was never done. They discussed building a garage. That was never done. But they, he indicated that he and his wife, Misty, had discussed going ahead at some point in time in the future, building a home, stick-belt home, where they were living at, which would necessitate the removal of the home. And it is a fact that these manufactured homes can be removed. They can be taken apart, pulled, the wheels put back on it, and pulled out. Mr. Brooks testified that they accept these types of homes as trade-ins quite frequently. Now, then, Misty also argued that... Well, you know, let me just ask a question about that, because people buy these, whatever you want to call them, modular homes, they come in two pieces, but then they do different things with them. Some people leave the wheels and everything on and live in them that way, and some people put them on a very clearly permanent foundation where it rests on the foundation just like you would any home, so it all boils down to the facts. But you agree that this whole case turns on whether or not it was permanent. I believe that is one of the main factors that this Court is to determine, Your Honor. And again, whenever the husband, Lutz Browning, testified that they had discussed building the Stickfield home, Misty never disputed that whenever she was called in for battle witness. For the equitable lien, Your Honors, in this situation, there was no written contract between any of the parties. So in order to receive, to have a valid claim for an equitable lien, Misty must prove that there is some type of debt, duty, or obligation owing an array to which that obligation fastens, which can be readily identified. In this situation, there was no debt owing from Orlin, Debra, or Browning to Misty. Misty didn't owe any money on the manufactured home. She didn't even co-sign the loan to help get the utilities to the manufactured home. And Misty also testified there was never any discussion as to what property they were going to receive. How much acreage? Was it half an acre? Two acres? All 40 acres? That was never discussed, and when she testified, she said, I don't know. And also in this situation, you know, there was no mistake by either side. Misty knew she did not own this property. She owned another property down in Union County that she couldn't put this mobile home on. She knew what was required in order to have valid title to real estate. She knew going into this situation that she did not have that. She also alleged in her counter-complaint that Orlin, Debra, and Browning approached Orlin about putting this manufactured home on their property. And at trial, that was not the testimony. At trial, everyone agreed that Misty and her husband, Butch Browning, approached Orlin, Debra, and Browning about putting the property there. They in no way induced her to put that property there, or to put that home there. Excuse me. There's also the claim for unjust enrichment. And again, in this situation, there is no doubt that Orlin and Debra own the real estate. Misty owned the mobile home. Orlin and Debra don't want the mobile home. They're very happy with Misty to have it. She can take it. There's no detriment there that Misty is losing. That's her property. There's never been any argument there. And again, in their grief, Misty argues that Orlin and Debra just sat back and let her come in and improve their land. And again, Misty knew she was doing that when this all occurred. She knew she didn't own the property. She knew she was out there putting this manufactured home on the property. You know, that can be reversed as far as your clients. They knew that this structure was being put on their property. And there's the theory expressed by your opposing counsel here, too, that you can't just stand by and watch somebody go and build something on your property and allow it to happen and then say, well, now it's mine. And that's true, Your Honor. Everybody made bad decisions in this case, didn't they? Unfortunately, Your Honor, yes. Although I would also ask the court to take note that John Carville, who was a real estate appraiser, testified regarding the manufactured home and the value of the whole 40 acres. And he said, you know, with going out and putting this manufactured home right in the middle of this 40 acres, you basically decrease the value of that 40 acres because you're going to have to split it up or do something with it. Well, if that's the case and let's say we reversed and then the trial court found it didn't increase the value of the property, then they'd get nothing for their equitable lien and wouldn't have the home either, right? That could be true, Your Honor. Maybe your clients would be better off that way. Unfortunately, no one's going to be better off in this situation, Your Honor. As is the case in many of our cases we've all dealt with. The last issue was that the trial court was incorrect to require Misty to remove her mobile home. This was all done under a forcible entry and detainer action, which typically does deal with possession of the property. And I'll admit, I could not find very much out there on this issue. But to me, if I'm renting an apartment or a house and I'm being evicted, it's implicit, I believe, in the act that I would be entitled to all of my personal property and everything that was mine in that. And I think that is kind of implicit here. Oral and Deborah admitted that they didn't own that manufactured home. They didn't claim any ownership to it. So that was Misty's property and she should be entitled to it. And so we would believe that, you know, the trial court was correct in allowing Misty to retain ownership and possession of that manufactured home. And based upon the arguments presented here today, Your Honors, and in our brief, we would ask that this court affirm the trial court's ruling. Thank you. Mr. Counsel. Mr. Daske, Counsel, what's your endgame here? Let's say we agree with you and we reverse and we send it back. And then at that point, since the trial court hasn't decided this, there would have to be a hearing to determine the amount, if any, of your equitable lien, right? Yes, Your Honor. So then let's say you get that lien. So you've got a lien on the real estate. Yes, Your Honor. So is that lien? Yes. To go to the first question on whether or not there was a foundation to the home, cited in my reply brief is the testimony of Mr. Brooks, which states, question, the home has a concrete foundation, correct? Answer, correct. Question, and a masonry foundation, correct? Answer, correct. Question, and that's not just a facade, correct? It actually stabilizes the building. Answer, correct. How deep is the concrete? Answer, it's generally below the frost line, so we'll say in the range of, and there was an objection for speculation. And there are piers connected to the outside. Answer, the footings are connected together. Okay. So it's clear that there is a concrete foundation around this house. And once again, if you look at the exhibits, you can see that the blocks are mortared together. To address the appellee's arguments that the home can't be relocated, so can a small, regular home. So can a garage. That doesn't mean it's not a substantial effort. In fact, the testimony at trial from Mr. Brooks was that it was probably going to cost in the range of $20,000 to remove this manufactured home. And that didn't include tearing down the permanent foundation that was already there. Let me just, I'm reading on down in your reply brief where he testifies. The blocks are sitting on the concrete footing and the footing is supporting the home. The interior part of the footings. And then there were piers. And so I guess when your opposing counsel here talks about you could take the blocks out, that's because there are piers inside the crawl space. Exactly. There are piers that actually support the home, but the piers are themselves set on pad. And which are also, there's footings connecting those pads and piers to the outside foundation as well, which Mr. Brooks testified to that it's basically a very elaborate system that is actually more elaborate than a state-built home.  To address the appellee's argument that an equitable lien, that the appellant hasn't asserted an equitable lien, this court in Robinson v. Robinson found in a similar situation where the husband and wife who built a home on their parents' real estate with no transfer of property, it was basically a presumption that the person was acting in placing the home there under the understanding that in the future they were going to receive the real estate. Here there's no question that the appellant was married to the appellee's only son. That there was argument that maybe it was the appellant who approached the appellee's but I believe actually the testimony at trial was that there was conversations about where they were going to build this home. And in fact the testimony at trial was that the appellee said, land is all we have to give so that's what we want to do for you. So that was the understanding that the appellant placed this manufactured home on the property. It wasn't that she just said, hey, I want to put this home on your property and then started to do it. As far as inducement, as the appellees have indicated, they even paid for the utilities to be ran to this property. I mean, by paying for something, are you not inducing somebody to do it? I mean, you're saying, build it here and we'll even help you pay for it. Given all that, I think an equitable lien is clear here if there is value determined by the lower court that the appellant's manufactured home increased the appellee's property. I have nothing further. Thank you. Thank you. We appreciate the brief arguments. The counsel will take the case on to the advisory committee and go further along in the schedule before us today for adjournment. All rise.